Lloyd LITTLE, Appellant,

v.

WATKINS MOTOR LINES, Inc., Dewrall
Ellis, James Hayes, Appellees.

Dorothy LITTLE, Appellant,

v.

WATKINS MOTOR LINES, Inc., Dewrall
Ellis, James Hayes, Appellees.

Catherine I. MYERLY as Executrix of the
Estate of Lowell R. Myerly, De-
ceased, Appellant,

v.

WATKINS MOTOR LINES, Inc., Dewrall
Ellis, James Hayes, Appellees.

Catherine I. MYERLY, Appellant,

v.

WATKINS MOTOR LINES, Inc., Dewrall
Ellis, James Hayes, Appellees.

Lloyd LITTLE as Administrator of the
Estate of Connie Sue Little, De-
ceased, Appellant,

v.

WATKINS MOTOR LINES, Inc., Dewrall
Ellis, James Hayes, Appellees.

Nos. 15785–15789.

United States Court of Appeals
Eighth Circuit.

June 12, 1958.

F. M. Beatty, Sigourney, Iowa (H. S. Life, Oskaloosa, Iowa, was with him on the brief), for appellants.

Arthur A. McGiverin and W. T. Barnes, Ottumwa, Iowa, for appellees.

Before SANBORN, WOODROUGH, and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Plaintiffs appeal from final judgments sustaining defendants' motion for directed verdicts and dismissing five consolidated suits for damages for deaths and injuries resulting from an automobile accident. These actions, originally commenced in the state court, were, upon defendants' motion, properly transferred to the federal court upon the basis of diversity of citizenship and jurisdictional amount. All actions involve common questions of law and fact. Plaintiffs are the surviving occupants of the Myerly automobile and the personal representatives of Lowell R. Myerly and Connie Sue Little, who died as the result of injuries suffered in the accident. For convenience, all occupants of the Myerly car, including those now deceased, will be referred to as plaintiffs.

Plaintiffs in their petitions assert that the damages which they claim were proximately caused by the negligence of defendant James Hayes, who was driving the tractor-trailer involved in the collision with the knowledge and consent of his co-defendants, Watkins Motor Lines, Inc., lessee, and Dewrall Ellis, owner, of the tractor-trailer.

Defendants in their answers admit that a collision occurred between defendants' tractor-trailer and the Myerly automobile about 4 p. m. on April 18, 1954, on Highway No. 92 a short distance east of the Skunk River bridge. The defendants do not admit the collision occurred on plaintiffs' half of the highway. Immediately prior to the accident, the Ford automobile, owned and operated by Mr. Myerly, was traveling east on Highway No. 92. Riding with Mr. Myerly were Mr. Little, who occupied the right front seat; Mr. Little's daughter, Connie Sue, who sat on her father's lap; Mrs. Little, who occupied the left rear seat; and Mrs. Myerly, who occupied the right rear seat. The defendants' tractor-trailer was traveling west on Highway No. 92.

Plaintiffs, in their specifications of negligence, among other things, charged the defendants were guilty of

negligence in operating the tractor-trailer at an excessive speed, in failing to have said vehicle under control, in failing to keep the proper lookout, and in failing to yield one-half of the traveled way to the Myerly automobile. Defendants' motion for directed verdicts at the close of plaintiffs' evidence is based principally upon defendants' contention that plaintiffs' evidence is insufficient as a matter of law to establish any of their asserted specifications of negligence. The motion also raises the issue that the plaintiffs have failed to meet the burden imposed upon them by Iowa law to prove freedom from contributory negligence. Defendants do not argue the contributory negligence issue in their brief. The trial court in the course of his remarks stated, "There is no contributory negligence in this case." In any event, the issue of freedom from contributory negligence ordinarily presents a question of fact for the determination of the jury. Merchants Motor Freight v. Downing, 8 Cir., 227 F.2d 247; Weilbrenner v. Owens, 246 Iowa 580, 68 N.W.2d 293, 294; Smith v. Darling & Co., 244 Iowa 133, 56 N.W.2d 47, 53. The record in the present case would not support a conclusion that the plaintiffs were guilty of contributory negligence as a matter of law.

We now proceed to defendants' main contention that the plaintiffs have failed to produce evidence which would sustain a verdict for the plaintiffs based upon any asserted specification of negligence. If the evidence was sufficient to support a verdict upon any of the alleged specifications of negligence, the court erred in directing the verdict for the defendants. Plaintiffs in their brief insist that there is evidence sufficient to support the charge that defendants' tractor-trailer failed to yield one-half of the right of way to the Myerly automobile. We shall consider the law and facts applicable to this specification of negligence.

Section 321.298 of the Iowa Code, I.C.A. provides:

"Persons on horseback, or in vehicles, including motor vehicles, meeting each other on the public highway, shall give one-half of the traveled way thereof by turning to the right."

The Iowa court has consistently held that violation of the above statute constitutes prima facie evidence of negligence. Lauman v. Dearmin, 246 Iowa 697, 69 N.W.2d 49; Worthington v. McDonald, 246 Iowa 466, 68 N.W.2d 89, 47 A.L.R.2d 135; Kisling v. Thierman, 214 Iowa 911, 243 N.W. 552; Brinegar v. Green, 8 Cir., 117 F.2d 316, 321.

In Smith v. Darling & Co., supra, the court reversed judgment n. o. v. for defendants. Violation of section 321.298 of the Iowa Code, I.C.A. was involved. The court states (56 N.W.2d at page 52):

"* * * It must also be admitted it is a matter of some speculation and conjecture as to the precise manner in which the collision occurred. But we think it is not fatal to plaintiff's case that the exact position of the two vehicles or the exact manner in which they collided is not shown provided there is substantial evidence the collision occurred on decedent's side of the highway.

"As stated in Potter v. Robinson, 233 Iowa 479, 481, 482, 9 N.W.2d 457, 458, 'This collision involves two vehicles proceeding in opposite directions on the same highway. The crux of the case is: Which vehicle was on the wrong side of the road at the time of impact? * * * The evidence on this issue determines whether or not a jury question was presented.' * * *"

Mrs. Myerly and Mr. and Mrs. Little testified at the trial. Mrs. Myerly apparently, because of the nature of the injuries she sustained, had no recollection of the facts surrounding the accident. Mr. and Mrs. Little both testified positively that the Myerly automobile was at all times after leaving the bridge and up to the point of the collision on its own or the south half of the highway. The collision occurred about 960 feet east of the bridge. As heretofore stated, the

defendants in their answers admitted that a collision occurred between the Myerly car and the defendants' tractor-trailer. It would appear that if the jury believed the Littles' testimony that the Myerly car was at all times material on the south half of the highway they would have been fully justified in drawing an inference that the admitted collision occurred upon the south half of the highway.

The rule is well established in Iowa as elsewhere that a party against whom a motion for a directed verdict is made is entitled to have the evidence viewed in the light most favorable to him, and is entitled to have the benefit of every legitimate inference that may properly be drawn from the evidence. Merchants Motor Freight v. Downing, supra; Elzig v. Gudwangen, 8 Cir., 91 F.2d 434; Weilbrenner v. Owens, supra; Hahn v. Strubel, 243 Iowa 438, 52 N.W.2d 28.

Mrs. Little is the only occupant of the Myerly car who testified as to the tractor-trailer's movements. Mr. Little testified that his forward vision was largely obstructed by his daughter sitting upon his lap. Mrs. Little first observed defendants' vehicle when it was about 1500 feet distant. She did not constantly observe its movements from that time up to the point of collision. She definitely testified that the Myerly car was at all times on its right side of the highway. There is some confusion in her testimony as to the location of defendants' vehicle. Her testimony is, in part, as follows:

"Q. Do you remember seeing the semi coming towards you? A. I do, sir, that.

"Q. Just tell what—how it appeared. A. It was coming just right at us, sir.

"Q. And did it strike you, or what do you know about it? Just tell what you know. A. To me it felt that we were picked up and throwed and dropped into a deep ditch, sir. I can remember the terrific crash that it was.

\* \* \* \* \* \*

"Q. Now, you were asked some question about whether you ever saw the semi trailer on the south side of the highway. Did you see the semi trailer as it came towards your car you were riding in? A. Yes, sir, I remember that, sir, of coming across the road at us. That was the only thing I remembered—I mean seeing it come at us. At that time it would have been—you know—on the wrong—but of course that was——

"Mr. Barnes: I didn't hear all that answer, Mrs. Little.

"The Witness: He asked me, sir—

"Mr. Beatty: You answer my——

"Mr. Life: Now wait just a minute. You answer——

"Mr. Barnes: May I have the question read back?

(The pending question was read back to the point where the witness broke off.)

"The Witness: And I answered that I did, sir.

\* \* \* \* \* \*

"Q. When you saw the semi coming toward the vehicle in which you were riding in, had you heard a terrific crash? A. I had not, sir. That I don't remember. I just remember looking up and seeing it just right at our—you might——

"Mr. Life: Let her finish, please.

"Mr. Barnes: I didn't mean to cut you off. I'm sorry. A. (continuing) I just remember seeing it—you know—coming toward—at me. I would say it looked just like it was right at my window, sir."

On cross-examination Mrs. Little made answers of which the following are typical:

"Q. And when you saw that semi, was it on its own side of the road? A. It was, sir.

"Q. Did you ever see the semi over on the wrong side of the road prior to the collision? A. No, sir.

"Q. Can you tell this jury whether or not the semi moved over on to

the north shoulder of the highway—that would be his own side—before the impact occurred with the McKeag car? A. Sir, I don't remember the actions of the semi after the McKeag car went to go around the pickup, sir.

"Q. But it is your testimony that the semi was on its own side of the road at the time of the impact? A. Yes."

The trial court's remarks during the argument on the motion for directed verdicts appear to indicate that the inconsistency of Mrs. Little's testimony led him to believe that there was no substantial evidence to establish that the defendants' vehicle had invaded plaintiffs' half of the highway.

In Law v. Hemmingsen, 247 Iowa 855, 76 N.W.2d 783, 786, the court states:

"The weight of testimony is for the jury notwithstanding contradictions or inconsistencies in the testimony of the particular witness. Twohey v. Brown, 246 Iowa 114, 66 N.W.2d 870, 872, 88 C.J.S., Trial, § 208; Russell v. Leschensky, 224 Iowa 334, 338, 276 N.W. 608."

We believe that the rule above stated applies to the testimony of Mrs. Little. We believe that it was for the jury to interpret the testimony of Mrs. Little and to determine the weight to be given to it, and that the rule is especially applicable here because of Mrs. Little's positive testimony that the Myerly car was at all times material on its right hand side of the road, which testimony was corroborated by Mr. Little.

In addition to the evidence heretofore set out, numerous photographs were received in evidence. These show the position of the vehicles immediately after the accident, the damage to the vehicles, and views of the highway. The Myerly automobile came to rest in the south ditch near the fence line. The tractor and part of the trailer were to the south of the pavement, the balance of the trailer lying across the south half of the highway, with the rear end extending somewhat north of the center line. The exhibits tend to show the major impact on the Myerly car was in the vicinity of the left front door. The left front of the tractor shows damage. The weight of the loaded tractor-trailer greatly exceeded that of the automobile.

The physical facts outlined above are entirely consistent with plaintiffs' contention that the collision occurred on plaintiffs' side of the highway, and tend strongly to support such contention.

This court in Guyer v. Elger, 8 Cir., 216 F.2d 537, 539, had occasion to examine the Iowa rule relative to the sufficiency of circumstantial evidence to support a verdict. In that case the plaintiff relied entirely upon circumstantial evidence, as the occupants of the plaintiff's car were killed in the accident. The defendant survived, and testified that the accident was caused by plaintiff's car suddenly invading defendant's half of the traveled way. Judge Graven denied motions for a directed verdict and for judgment n. o. v. This court quotes extensively from Judge Graven's memorandum opinion, wherein he points out that the earlier Iowa cases followed the so-called "exclusion of every other hypothesis rule," but that the more recent cases have uniformly followed the liberal "more reasonably probable rule." Our opinion contains the following summary from Judge Graven's opinion (at page 540):

" 'Fairly recently three different Iowa trial judges have been reversed by the Iowa Supreme Court for being too strict in the matter of submissibility in tort actions where the plaintiffs relied upon circumstantial evidence. * * *

" 'This Court is of the view that the trend of the decisions of the Iowa Supreme Court in civil cases in which circumstantial evidence is involved has been in favor of submissibility and away from the somewhat more strict views expressed and somewhat more strict attitude indicated in the earlier cases' ".

We found that the Iowa cases supported the view taken by Judge Graven.

In Bokhoven v. Hull, 247 Iowa 604, 75 N.W.2d 225, defendant's motion for a directed verdict was overruled, and the plaintiff recovered damages. Defendant urged that plaintiff had failed to produce substantial evidence to sustain its charge that defendant had violated section 321.-298. The only direct evidence offered as to the location of the vehicles on the highway before the collision was the testimony of each driver that he was driving on his right hand side of the road. In affirming the judgment for the plaintiff the court states (75 N.W.2d at page 227):

" * * * Although proof of the location of the non-conforming car before the 'meeting' may be of assistance in determining its location at the time of the collision such proof is not essential. As was pointed out in Smith v. Darling & Co., 244 Iowa 133, 136, 56 N.W.2d 47, 49, we are firmly committed to the rule that plaintiff's theory of causation need not be proved by evidence so clear as to exclude every other possible theory. The evidence must be such as to make that theory reasonably probable, not merely possible, and more probable than any other hypothesis based on such evidence. * * * "

Other Iowa cases holding circumstantial evidence sufficient to support a verdict are Law v. Hemmingsen, supra; Hackman v. Beckwith, 245 Iowa 791, 64 N.W.2d 275.

■■ The Iowa court has frequently pointed out that in determining the sufficiency of the evidence each case must be determined upon its own facts. A careful examination of the record in the case before us convinces us that under Iowa law plaintiffs have made out a prima facie case upon the specification of negligence charging that defendants had failed to yield one-half the right of way. This conclusion finds support in the direct evidence, heretofore pointed out, as well as by circumstantial evidence.

■ The evidence in support of the other alleged specifications of negligence is much weaker. We deem it unnecessary to here determine whether there was sufficient evidence to go to the jury upon any other specification of negligence since what has heretofore been said establishes that the court committed error in directing the verdict for the defendants.

■ One other issue should be briefly considered. There is evidence in the record which points to the possibility that the driver of the defendants' vehicle may have been confronted with an emergency not of his own making. Plaintiffs' evidence discloses that the McKeag car passed plaintiffs at the bridge and continued on the left side of the road, to pass a pickup truck about 150 feet ahead of the Myerly car. Photographs in evidence show collision damage to the McKeag car and the pickup. The plaintiffs' evidence does not describe the facts relating to any collision that may have occurred between the McKeag car and the pickup or whether it affected the operation of defendants' tractor-trailer. Since the verdicts were directed at the close of plaintiffs' testimony, defendants did not offer any evidence with reference to emergency. Defendants in their brief state, "although Appellees have not argued that the driver of the semi was confronted with an emergency in the case at bar because the evidence introduced by the Plaintiffs was insufficient to even show an emergency, it is possible that one existed in the case at bar." We need go no further here than to state that upon the present record legal excuse for any negligence of which defendants might be guilty has not been established with sufficient certainty to entitle defendants to directed verdicts.

The judgments appealed from are reversed.