Luella Coulthard, appellee, v. Donald Keenan and Joseph Keenan, appellants.

No. 51370.

(Reported in 129 N.W.2d 597)

JULY 16, 1964.

Clewell, Cooney & Fuerste, of Dubuque, for appellants.

Lynch, Dallas, Smith & Harman, of Cedar Rapids, for appellee.

GARFIELD, C. J.—Defendants Donald and Joseph Keenan have appealed from an order for new trial following a jury verdict for them in an action brought by Luella Coulthard to recover for personal injuries from being struck by a 1954 Ford car owned by Joseph, driven by his son Donald with the former's consent. (Since the owner's consent is conceded, for convenience we refer to Donald as if he were sole defendant.) We affirm the trial court.

The accident occurred at the intersection of Main and Franklin Streets in Manchester (population 4400) a little before 5 p.m., September 27, 1962. Main runs east-west, Franklin north-south. Each is 42 feet wide between curbs. Each street has four lanes, two for traffic in each direction. Plaintiff, age 72, was walking east in the clearly marked crosswalk from the southwest to the southeast corner of the intersection after waiting a few moments for the traffic light facing her to turn green.

Defendant, age 17, came from the east in the inside lane on Main Street, stopped for the traffic light to turn green, then turned into Franklin, striking plaintiff when she was about 17 feet east of its west curb and about in the center (north and south) of the crosswalk. Plaintiff was carried or thrown 11 feet south of the 9-feet-wide crosswalk. As defendant stopped for Franklin Street the sun was shining brightly in his eyes from a direction slightly south of west. Defendant testified on direct examination "the sun blinded me and I couldn't see anything." He also said he did not, and could not because of the sun, see plaintiff until the front of his car was a foot or less from her.

Defendant estimated his speed at not over five miles per hour. A disinterested eyewitness estimated it at probably more than five but less than 20 miles per hour. As soon as defendant saw plaintiff he "slammed on the brakes" but could not avoid striking her. Defendant's left turn signal light was blinking as he stopped for the intersection and made the turn.

Plaintiff testified that as she started into the crosswalk she looked in both directions on Main Street, cars were going east and west through the intersection but she did not see defendant's car before it struck her.

After the accident defendant pleaded guilty to the charge

of failure to yield the right-of-way to a pedestrian. Before that he told plaintiff the accident was his fault. Defendant and his parents testified plaintiff told them the accident was as much her fault as it was defendant's because she did not see his car. Plaintiff denied this testimony and her sister corroborated her as to what was said to the parents. Plaintiff was seriously injured at the time it is claimed she made the statement.

Three charges of negligence against defendant were submitted to the jury: failure to 1) keep a proper lookout, 2) have his car under control, and 3) yield the right-of-way to plaintiff, using the crosswalk at the intersection.

The jury retired to deliberate at 2:30 p.m. At 2:05 a.m. (over 11½ hours later) the jury was brought into the courtroom. The foreman told the court the jury was hopelessly deadlocked. The judge then told the jury what he said was the substance of a "verdict-urging" instruction. It was not in writing and the attorneys were not present nor aware of what took place until later. The court then asked the jury if there was any possibility further discussion might resolve their problem. "Do you wish to discuss it among yourselves?" The foreman replied, "I would think so, yes." The court then directed the bailiff to conduct the jury back to the jury room, "and as soon as you have finished whatever discussion you wish to have, the bailiff will bring you back and we will wait." At 2:15 the jury returned a verdict for defendant.

Plaintiff's motion for new trial asserts error in failing to give a requested instruction and to instruct the jury defendant was negligent as a matter of law in not keeping a proper lookout and not yielding the right-of-way to plaintiff. Also in giving the oral verdict-urging instruction at 2:05 a.m. Further, that the verdict did not effectuate substantial justice and the jury failed to respond to the real merits of the controversy.

I. The court ruled a new trial should be granted in the interests of justice and another jury permitted to pass upon the evidence. The order quotes this from Porter v. Madrid State Bank, 155 Iowa 617, 619, 136 N.W. 666: "* * * although the evidence is conflicting and the case was properly submitted to the jury, the court may, in the exercise of a sound discretion

and on reasonable grounds of belief that an erroneous verdict has been reached, grant a new trial in order that the facts may be passed upon by another jury." The order also cites Burke v. Reiter, 241 Iowa 807, 813, 42 N.W.2d 907, 911, and Hall v. City of West Des Moines, 245 Iowa 458, 462, 62 N.W.2d 734, 736. Porter v. Madrid State Bank, supra, has frequently been approved, as recently as in Coleman v. Brower Construction Co., 254 Iowa 724, 730, 731, 119 N.W.2d 256, 260.

Defendant really assigns but a single error—granting of the new trial. Most of the argument is devoted to the proposition there is no reasonable basis *in the record* for the exercise of discretion to grant the new trial (this is emphasized over and over), and the ruling is arbitrary, based merely upon the court's disagreement with the verdict. Some of the argument is on the proposition the grounds of the motion for new trial were without merit. We are not persuaded by the argument first referred to. We have little difficulty finding in the record reasonable bases for the exercise of the trial court's discretion to grant the new trial in the interest of justice.

Several recent opinions state the essential rules that apply to an appeal of this kind and cite precedents to support them. They need not be repeated here. See Coleman v. Brower Construction Co., supra, 254 Iowa 724, 730–732, 119 N.W.2d 256, 259, 260, and citations; Larew v. Iowa State Highway Comm., 254 Iowa 1089, 1094, 120 N.W.2d 462, 464, 465, and citations; McMaster v. Hutchins, 255 Iowa 39, 48, 49, 120 N.W.2d 509, 514; Comer v. Burns, 255 Iowa 251, 258, 259, 122 N.W.2d 305, 310, 311; Warrender v. McMurrin, 256 Iowa 617, 621, 128 N.W.2d 285, 288, and citations. Appellant's arguments in the Coleman and McMaster cases, especially, were quite similar to this defendant's argument.

II. As stated, the trial court submitted to the jury the issue whether defendant was negligent in one or more of three alleged respects. Plaintiff properly objected to the court's failure to instruct that defendant was negligent as a matter of law in not keeping a proper lookout, and 2) failure to yield the right-of-way to plaintiff, using the crosswalk.

We are fully aware of the rule that in the absence of an

admission by his adversary it is seldom proper for the court to instruct the jury that a party who has the burden of proof on an issue has established his claim as a matter of law. Ruble v. Carr, 244 Iowa 990, 993, 994, 59 N.W.2d 228, 230, 231, and citations; Williams v. Stroh Plumbing & Electric, Inc., 250 Iowa 599, 601, 94 N.W.2d 750, 752, 82 A. L. R.2d 465; Markman v. Hoefer, 252 Iowa 118, 127, 106 N.W.2d 59, 65. Of course plaintiff had the burden to prove defendant's alleged negligence.

We think this is one of the unusual cases in which the court could properly instruct the jury defendant was negligent as a matter of law in the two respects last referred to. As previously stated, defendant testified on direct examination the sun blinded him so he could not see anything. He also said he did not, and could not because of the sun, see plaintiff until his car was within a foot of her. It is clear defendant failed to yield the right-of-way to plaintiff, a pedestrian in the crosswalk, in violation of section 321.257(1), Code, 1962, an offense to which he pleaded guilty.

Defendant tells us these complaints against the instructions were rendered moot by his counsel's concession before the jury, not shown of record, that he was causally negligent in failing to yield the right-of-way to plaintiff and the only issue defendant relied upon was that of contributory negligence. Such a concession further supports our conclusion the trial court could properly instruct defendant was negligent as a matter of law in this respect. It is not claimed there was any concession defendant was negligent in the matter of lookout.

We are not satisfied a concession defendant was causally negligent in failing to yield the right-of-way to plaintiff obviates the court's error in not instructing that negligence in the matters of lookout and right-of-way was established. Juries look to the court for the law governing their deliberations. At the outset they are sworn to render a verdict solely on the evidence and in accordance with the court's instructions. Rule 187(i), Rules of Civil Procedure. This jury was instructed it was the court's duty to determine the law and the jury was to consider the issues and matters submitted to it by the instructions. The jurors may well have felt it was their duty to consider and de-

cide whether defendant was negligent in the two matters of lookout and right-of-way, else these issues would not have been submitted.

See in support of our holding defendant was negligent as a matter of law in failing to keep a proper lookout Ball v. Sears, Roebuck & Co., 5 Cir., Ala., 223 F.2d 695, 697; Barth v. Reichert, 34 Ill. App.2d 472, 181 N.E.2d 609, 612.

Under quite similar facts the trial court denied a new trial following a verdict for defendant and, upon plaintiff's appeal, was reversed in the Ball case. Barth v. Reichert states: "It is negligence in law when the circumstances would have required any reasonable man to stop and not proceed blindly, particularly at an intersection where pedestrians are likely to be crossing." See also 8 Am. Jur.2d, Automobiles and Highway Traffic, section 728; Annotation, 22 A. L. R.2d 292, 381, 390, 408.

On defendant's duty to yield the right-of-way to plaintiff see Gearhart v. Des Moines Ry. Co., 237 Iowa 213, 224, 225, 21 N.W.2d 569, 575; State v. Paul, 242 Iowa 853, 858, 48 N.W.2d 309, 311; Arenson v. Butterworth, 243 Iowa 880, 883, 884, 54 N.W.2d 557, 559, 560; 7 Am. Jur.2d, Automobiles and Highway Traffic, section 215; Annotation, 164 A. L. R. 8, 35, 36.

■ III. Plaintiff requested an instruction that if defendant had an entire loss of visibility it was his duty to stop. The court refused the request apparently because he did not think it was included in any pleaded specification of negligence. The request seems to state the law heretofore announced by us. Mueller v. State Auto. Ins. Assn., 223 Iowa 888, 892, 893, 274 N.W. 106, 113 A. L. R. 1256, 1259, and citations.

■ We think the duty of a motorist to stop if he has entirely lost visibility is included within his duty to maintain a proper lookout and that the charge of failure to keep such a lookout was sufficient to warrant giving the substance of such a request, if the issue of lookout was to be submitted to the jury as one of fact. Rebmann v. Heesch, 227 Iowa 566, 578, 579, 288 N.W. 695; Nichols v. Snyder, 247 Iowa 1302, 1310, 78 N.W.2d 836, 841. These opinions hold, "The duty of keeping a proper lookout includes not only using reasonable and ordinary care to

discover the person in danger, but also reasonable care in the operation of the vehicle to avoid injuring him."

IV. The court failed to submit to the jury plaintiff's charge that defendant was negligent in not sounding his horn as required by section 321.314, Code, 1962. Although defendant was not asked whether he sounded his horn it is clearly to be inferred he did not do so. If upon a retrial there is evidence defendant failed to sound his horn this charge of negligence should be submitted to the jury. Arenson v. Butterworth, supra, 243 Iowa 880, 886, 54 N.W.2d 557, 560, 561; Nichols v. Snyder, supra, 247 Iowa 1302, 1306–1310, 78 N.W.2d 836, 838–841. Defendant was not relieved of the duty to sound his horn by his testimony he did not see plaintiff. Nichols case and citations.

That no objection was taken in the trial court to failure to submit to the jury this charge of negligence does not prevent consideration of such failure in determining whether the order for new trial was an abuse of discretion. Coleman v. Brower Construction Co., supra, 254 Iowa 724, 732, 119 N.W.2d 256, 260, 261, and citations; McMaster v. Hutchins, supra, 255 Iowa 39, 48, 120 N.W.2d 509, 514, and citations.

Two other precedents which support our holding it was not an abuse of discretion to grant a new trial because of the matters above discussed are: Ledferd v. Reardon, 303 Ill. App. 300, 25 N.E.2d 116; Martin v. Parkins, 55 N. D. 339, 213 N.W. 574.

V. We think the circumstances surrounding the return of this verdict, heretofore referred to, furnish added support for the grant of a new trial. After 11½ hours of deliberation the jury reported to the court at 2:05 a.m. it was hopelessly deadlocked. The court orally gave the jury the substance of a "verdict-urging" instruction. Rule 197, Rules of Civil Procedure, requires an additional instruction "shall be in writing." We have held, however, a verdict-urging instruction which does not define issues of the case need not be in writing although it is far better if so given. In re Estate of Cocklin, 232 Iowa 266, 273, 5 N.W.2d 577, 580, and citations; State v. Slater, 242 Iowa 958, 961, 962, 48 N.W.2d 877, 879, 880, and citations.

We have said the ultimate test of the propriety of

a verdict-urging instruction is whether it forced or helped to force an agreement, or merely started a new train of real deliberation which ended the disagreement. Also that where the jury's disagreement is of more than ordinary and usual duration and, after giving of a verdict-urging instruction, a verdict is reached in a short time in comparison with the duration of the disagreement, a presumption arises that the instruction was prejudicial. State v. Peirce, 178 Iowa 417, 424, 427, 159 N.W. 1050; Middle States Utilities Co. v. Incorporated Tel. Co., 222 Iowa 1275, 1279, 271 N.W. 180, 109 A. L. R. 66, 69. See also In re Estate of Cocklin, supra.

Perhaps 11½ hours of disagreement is not of more than ordinary and usual duration. But certainly the jury could not have given this case any real deliberation after it returned to the jury room. It must have taken at least five minutes to escort the jury into the courtroom, give the oral instruction, question the foreman and return the jury to its room. If so it took not over five minutes for the jury to agree on a verdict, have the foreman sign it and return into open court at 2:15.

We realize the trial court has a good deal of discretion as to how long a jury should deliberate and whether to give a verdict-urging instruction and we are slow to reverse upon such a ground. Although we do not hold there was reversible error here in this respect, we do think sending a jury back to its jury room about 2:10 a.m. after it reported it was hopelessly deadlocked and after orally urging an agreement is not to be commended. As previously indicated, the trial court might reasonably conclude this circumstance furnished additional basis for setting aside the verdict and granting a new trial.

It is not necessary that reversible error was committed upon the trial in order for the court to grant a second trial in the interest of justice. If such were the rule, the inherent power of the court to correct a failure of justice would be meaningless. Coleman v. Brower Construction Co., supra, 254 Iowa 724, 730, 119 N.W.2d 256, 260, and citations; Comer v. Burns, supra, 255 Iowa 251, 258, 259, 122 N.W.2d 305, 310.—Affirmed.

All JUSTICES concur except HAYS, J., not sitting.