Renee NASSIF, Appellant,

v.

Augusta Pearl PIPKIN, Appellee.

No. 54031.

Supreme Court of Iowa.

June 23, 1970.

Paul W. Deck and Robert J. Larson, Sioux City, for appellant.

Gleysteen, Nelson, Harper, Kunze & Eidsmoe, Sioux City, for appellee.

STUART, Justice.

This is an action to recover damages for personal injuries and property damage growing out of an automobile collision which occurred on April 13, 1967 near the intersection of Pierce Street and River Drive in Sioux City. The jury awarded plaintiff total damages of $500. She has appealed alleging errors in the instructions, error in failing to direct a verdict in favor of plaintiff on liability and in failing to grant an additur or a new trial.

Pierce Street is one-way with three lanes of southbound traffic. Plaintiff was proceeding south in the east or left lane. Defendant attempted to cross Pierce Street from the exit of the municipal parking lot on the west side of Pierce to enter River Drive. Traffic in the two lanes nearest defendant stopped for her to cross. Plaintiff in the third lane did not stop and defendant ran into the side of plaintiff's car.

I. The parties stipulated that defendant pleaded guilty in municipal court to the charge of failure to yield the right-of-way. Defendant also testified: "The police arrived shortly thereafter and I was given a traffic summons. I paid the fine the next day because I thought it would be the easiest way to settle it."

The trial court instructed the jury in instruction 16: "It has been stipulated in this case that the defendant pleaded guilty in the Municipal Court of the City of Sioux City, to a charge of failure to yield the right-of-way. Such evidence may be considered by you as an admission that the defendant did in fact fail to yield the right-of-way. The plea is in no way conclusive. It is an admission against interest and may be explained."

Plaintiff claims the court erred in giving this instruction rather than her requested instruction 2, which states: "You are instructed that a failure to observe the mandates of a statute designed to guard against injury to persons or property constitutes negligence per se; the undisputed evidence in this case is to the effect that the defendant appeared in the Municipal Court of the City of Sioux City, Iowa, and plead guilty to a charge of failure to yield the right-of-way, and such is an admission against the defendant's interest and is substantive proof of negligence and if you find that, as a proximate result of the violation of the Statute the plaintiff was injured and suffered damages as alleged, if any, no further showing of negligence is necessary to warrant a recovery by the plaintiff."

Plaintiff argues "the violation by itself constitutes negligence and is conclusive evidence of negligence".

The requested instruction and plaintiff's argument confuses the instruction relating to defendant's plea of guilty with the instruction on defendant's duty as a driver entering a through highway. As no issue is before us on the right-of-way instruction, we assume the jury was told that failure to yield the right-of-way constitutes negligence. Iowa Uniform Jury Instruction No. 4.22. The trial court was correct in refusing an instruction which would have included such matters in the instruction explaining the effect of the guilty plea to the jury. It is proper to tell the jury that

failure to yield the right-of-way on entering a through highway is conclusive evidence of negligence but improper to tell the jury that the entry of a plea of guilty is conclusive evidence of failure to yield the right-of-way. Apparently plaintiff is taking the position that an admission against interest evidenced by the plea of guilty to a charge of failure to yield the right-of-way is conclusive evidence that defendant failed to yield the right-of-way. This is not the law. It was correctly stated in instruction 16. Martin v. Cafer (1965), 258 Iowa 176, 185, 138 N.W.2d 71, 77; Book v. Datema (1964), 256 Iowa 1330, 1332–1333, 1337, 131 N.W.2d 470, 471, 474.

II. Plaintiff assigns as error, the trial court's failure to give her requested instructions 4 and 5 which were directed to the alleged specification of negligence that defendant was operating her vehicle in the wrong direction on a one-way street in violation of section 321.305, Code of Iowa, which provides: "Upon a roadway designated and sign-posted for one-way traffic a vehicle shall be driven only in the direction designated."

The trial court refused to submit this issue to the jury stating: " * * * the Court feels that under the record as made, and particularly the photographs which were introduced and upon which a stipulation was entered into, the facts * * * would not justify a jury in finding that the defendant in fact was traveling the wrong way on a one-way street."

Exhibits 18 and 19 are photographs taken from west and east sides of Pierce Street and show that the south lane of River Drive is directly east of the north lane of the parking lot exit. Parties stipulated these photographs showed the angle of travel better than estimates as to degrees or feet. At most plaintiff would have had to travel only slightly to the north of east to enter River Drive. She was crossing Pierce Street from a public parking lot to enter a public street.

"In interpreting a statute we look to the object to be accomplished, the evils sought to be remedied, or the purpose to be subserved and place on it a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it. (Citations)" Severson v. Sueppel (1967), 260 Iowa 1169, 1174, 152 N.W.2d 281, 284.

█ We agree with the trial court that defendant's conduct here did not violate section 321.305. We construe this section as prohibiting travel or movement opposite the designated flow of traffic. It was not intended to prohibit vehicles from deviating from the posted direction to enter, leave, change lanes in or traverse such one-way streets. The fact defendant was coming from a parking lot rather than a street is not significant in so far as this particular factual situation is concerned. The trial court was correct in not submitting this issue to the jury. In any event, no prejudicial error resulted as other appropriate specifications of defendant's negligence were submitted to the jury which found for plaintiff.

III. In order for plaintiff to prevail on her claim that she was entitled to a directed verdict on the question of liability and that only the matter of damages should have been submitted to the jury, (1) she must have established defendant's negligence was a proximate cause of the accident as a matter of law and (2) defendant's evidence as to plaintiff's contributory negligence in failing to maintain a proper lookout and failure to have her automobile under control must have been insufficient to raise a jury question on those issues.

█ (1) Plaintiff's argument on the first proposition depended to a large extent on a favorable holding on one or both of the first two divisions. As we have held against her on those propositions and as it is seldom proper, in the absence of an admission, for the court to instruct the jury that a party with the burden of proof has established his claim as a matter of law, we hold plaintiff has not established that defendant's negligence was the proximate

cause of the accident as a matter of law. In re Plumb's Estate (1964), 256 Iowa 938, 948, 129 N.W.2d 630, 636; Coulthard v. Keenan (1964), 256 Iowa 890, 894–895, 129 N.W.2d 597, 599.

(2) The evidence disclosed traffic on Pierce was stopping for a stop light ahead and that the driver of the car in the second lane signaled defendant to cross.

Plaintiff testified as she proceeded south on Pierce she was watching ahead and to her left or east for cars leaving a shopping center parking lot across the street from the municipal parking lot. On cross-examination she testified she was not observing what was going on to her far right. "I did not look way over to the right just before the accident. * * * I did not see the far west lane nor the auditorium parking lot. * * * I first saw the Pipkin car when it was five or ten feet away from me. The car that was to the right of me in the center lane came to a stop, so that Mrs. Pipkin could go by it. My car and the car to my right were traveling at about the same speed and that car did stop in time to avoid striking the Pipkin car. I was traveling about the same speed as other cars going south on Pierce were. Had I looked to the right or been looking to the right I could have seen Mrs. Pipkin's vehicle at a distance further than five to ten feet away. Had I been looking to the right, I would have had more time to apply the brakes and stop my vehicle. There is no reason why I wouldn't have been able to stop as rapidly as the car to the right of me."

■ Motorists in discharging their common law duty to exercise due care under the circumstances must keep a proper lookout. The term requires more than looking and seeing an object. It includes watchfulness of the movement of the driver's vehicle in relation to other things seen or seeable in the exercise of ordinary care. Bradt v. Grell Construction Co. (1968), Iowa, 161 N.W.2d 336, 341; McClenahan v. Des Moines Transit Co. (1965), 257 Iowa 293, 297, 132 N.W.2d 471, 474; Becker v. City of Waterloo (1954), 245 Iowa 666, 673, 63 N.W.2d 919, 923.

Control of an automobile connotes the ability to maneuver it with reasonable promptness so as to guide it in the manner willed by the operator acting as an ordinarily careful and prudent person would under the circumstances, including such control as will enable the operator to bring it to a stop with a reasonable degree of celerity. Bradt v. Grell Construction Co., supra, 161 N.W.2d at 343–344 and citations.

■ As the record indicates traffic in the two lanes to plaintiff's right stopped to let defendant cross in front of them, and as plaintiff by her own testimony admitted she was paying little attention to the traffic conditions to her right, we hold the trial court did not err in submitting to the jury the issue of plaintiff's contributory negligence in failing to keep a proper lookout and in failing to have proper control of her automobile.

■ IV. Defendant argues that any error in the foregoing divisions were without prejudice to plaintiff because she received a favorable verdict. It is true that ordinarily errors against a party are cured by a verdict in its favor unless the error goes to the amount of damages. Edgren v. Scandia Coal Company (1915), 171 Iowa 459, 474, 151 N.W. 519, 524–525; Herman and Ben Marks v. Haas (1914), 166 Iowa 340, 343, 147 N.W. 740, 742; Thew v. Miller (1887), 73 Iowa 742, 743, 36 N.W. 771, 772.

Plaintiff contended vigorously however that she was entitled to a directed verdict on liability and the trial court's failure to direct a verdict on that issue and to submit only the question of damages was prejudicial to her as the issue of liability might have affected the amount of damages.

Our determination that plaintiff was not entitled to a directed verdict on liability

makes it unnecessary for us to decide whether a favorable jury verdict when plaintiff was entitled to have the jury told liability had been established as a matter of law renders the failure to direct such a verdict nonprejudicial.

V. Plaintiff's last contention is that the trial court erred in overruling her motions for an additur or a new trial as authorized by Rule 244, Rules of Civil Procedure. In ruling upon motions for new trial, the trial court has a broad but not unlimited discretion in determining whether the verdict effectuates substantial justice between the parties. R.C.P. 344(f), par. 3. The trial court recognized it had that discretion but failed to find "the verdict was a result of passion and prejudice; that it does not respond to the real merits of the controversy or does not do substantial justice". It also found there was no showing the verdict was the result of compromise on the question of liability or that the jury failed to follow the court's instructions. We agree.

As the trial court observed there were several features of plaintiff's case which might account for the size of the jury verdict. These matters were summarized in its ruling as follows:

"Here the car damage was $213.99 and the medical expense $68.15. The medical testimony was conflicting as to permanent injury and if this element be eliminated from consideration there was an allowance of $282.14 for pain and suffering, admittedly a very modest figure. But the extent of the pain and suffering was a judgment for the jury to make and there was much in the testimony which may well have militated against great generosity on its part. At the original examination the doctor took no X-rays, prescribed no treatment, except aspirin, and told Miss Nassif to come to the office if she continued to be bothered by her neck. Notwithstanding, she failed to see the doctor again until July 31, although she said she was experiencing a constant ache. She testified that she was an Art major in college and valued some of her paintings at least $100.00 apiece. Her only sales were of two which brought $5.00 apiece. In the summer of 1967 she went to Minneapolis and procured employment at Guarantee Insurance Company. She testified that after staying a week she was unable to carry on her work because of her injury and returned home. Yet in answer to interrogatories filed on September 16, 1968, she stated that she worked for that company from June 1, 1967, through July 7, 1967. And although she produced Withholding Tax Statements (W-2) from other employers, she failed to produce one from Guarantee. She lost not one day from classes nor did the record show she was ever bed-confined. She received a similar injury to her neck in an automobile accident in December, 1965. Doctor Black treated her for this injury. He testified that he released her from his care as cured on July 15, 1966. Yet on October 5, 1966, the plaintiff, through her father as next friend, filed suit alleging that the injuries sued for had and would continue to cause pain and suffering and disability and were permanent. Her father's testimony that he was not familiar with the extent of the injury at the time of filing was not convincing."

We hold the trial court did not abuse its discretion in refusing to grant either an additur or a new trial under this record.

Finding no reversible error, we affirm the trial court.

Affirmed.

All Justices concur, except LeGRAND, J., who concurs in result.